IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JEREMIAH HENDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:20cv00281 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CITY OF ROANOKE, | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

After being barred from a local Walmart store, Plaintiff Jeremiah Henderson filed this civil rights action under 42 U.S.C. § 1983 against the City of Roanoke.[1] Henderson claims that that Roanoke officials—specifically members of its police department—failed to follow the procedures outlined in state and local statutes authorizing police officers to issue trespass bar letters on behalf of property owners. According to Henderson, the city's alleged failure to abide by these statutes deprived him of due process of law in violation of the Fourteenth Amendment. Because Henderson bases his civil rights claim *solely* on the alleged violation of

---

[1] Henderson separately filed a civil-rights action against a Roanoke City police officer who arrested him for an alleged assault against a Wal-Mart manager during the same encounter, which resulted in his being barred from the store. *See Henderson v. McClain*, No. 7:19CV00685, 2020 WL 6136850 (W.D. Va. Oct. 19, 2020). Although Henderson initially sought to combine the suit against the officer with the instant proceeding, the court denied his motion to consolidate. The court later granted the officer's motion for summary judgment based on qualified immunity. Henderson also recently filed suit against Wal-Mart in the Eastern District of Virginia, Norfolk Division, based on the same encounter at the Roanoke store. *See Jenkins v. Wal-Mart Stores, Inc.*, No. 2:19CV00271 (E.D. Va. Filed May 23, 2019). The court granted Wal-Mart's motion to dismiss that suit. As the city correctly points out in its briefing, there is a material distinction between the core factual allegations Henderson raises in his EDVA action against Wal-Mart, and what he alleges in the WDVA suits against the City and Officer McClain. In the EDVA lawsuit, Henderson contends that a Wal-Mart manager caused him to be barred from the store, while in the WDVA suits, he claims that Officer McClain barred him pursuant to the City's trespass bar program. Although these conflicting characterizations are puzzling (and troubling), the court, for purposes of analyzing the instant motion to dismiss, will rely solely on the factual allegations raised by Henderson in his WDVA suit against the City.

procedures prescribed in statutes that do not create a protected liberty interest, the court will grant the City's motion to dismiss the suit for failure to state a claim.

## BACKGROUND

On October 15, 2018, Roanoke Police Officer Austin McClain issued a trespass bar letter to Jeremiah Henderson after an altercation at the Valley View Walmart in Roanoke. (*See* ECF Nos. 1 at 2, 4.) The letter stated, "[y]ou are formally notified that your continued or subsequent presence on the premises will subject you to arrest for trespassing as authorized by the Code of Virginia and the Code of the City of Roanoke." (ECF No. 7-2 at 2.) The letter also cited the legal authority for barring Henderson, saying "[t]his action is taken pursuant to the written permission of the landowner of said property to effect such actions as filed with the Roanoke Police Department. (*See* Code of Virginia § 55-248.31:01)." *Id.* Henderson now brings a suit claiming that Roanoke did not have "permission of the landowner" and barred him from the Valley View Walmart in violation of Virginia law and his Fourteenth Amendment right to procedural due process.

Henderson argues that the Roanoke Police Department violated his due-process rights by failing to comply with the Virginia and Roanoke statutes authorizing law enforcement to issue trespass bar letters on behalf of property owners ("the Trespass Bar statutes"). On that basis, he seeks a declaratory judgment and nominal damages under 42 U.S.C. § 1983. He alleges that Roanoke is liable under *Monell v. Department of Social Services of City of New York*, which provides that municipalities may be sued directly when they are alleged to have caused a constitutional tort through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690 (1978).

The City filed a motion to dismiss for failure to state a claim under Rule 12(b)(6). The parties have fully briefed that motion, and the court held oral argument on November 18, 2020. The matter is now ripe for decision.

## MOTION TO DISMSS STANDARD

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557.)

## ANALYSIS

### A. The City's Arguments

The City makes five arguments across its two briefs in support of its motion to dismiss: (1) that Henderson has no liberty interest in remaining on private property, (*see* ECF No. 14 at 7–9); (2) that Henderson has not properly alleged a *Monell* claim, (*see id.* at 9–12); (3) that Henderson has alleged conflicting facts in his three cases, (*see id.* at 12–15); (4) that Virginia Code § 15.2-1717.1 does not create a liberty interest, (*see* ECF No. 16 at 2–5); and (5) that

Henderson's claim is defeated by the record in *Henderson v. McClain*, which reveals that Walmart managers asked for him to be barred from the property, (*see id.* at 6–8).

## B. The Trespass Bar Statutes Do Not Create a Liberty Interest

The City's fourth argument, that the Trespass Bar statutes do not create a liberty interest, is correct and determinative for purposes of its motion to dismiss. Because Henderson has only brought a suit for violation of his procedural due-process rights under those statutes, the fact that the Trespass Bar statutes do not create a liberty interest is fatal to his claim.

### 1. The Trespass Bar Statutes

Trespass bar letters in Roanoke are issued under two statutes, one state and one local. The Virginia statute is Virginia Code § 15.2-1717.1, which reads:

> Any locality may by ordinance establish a procedure whereby the owner, lessee, custodian, or person lawfully in charge as those terms are used in § 18.2-119, of real property may designate the local law-enforcement agency as a "person lawfully in charge of the property" for the purpose of forbidding another to go or remain upon the lands, buildings or premises as specified in the designation. The ordinance shall require that any such designation be in writing and on file with the local law-enforcement agency.

Using the authority granted by this statute, Roanoke adopted the second of the Trespass Bar statutes, Roanoke City Code § 21-32(b), which provides:

> Any owner of real property may, in writing on a form prescribed by the chief of police, designate the police department as a person lawfully in charge thereof, as that term is used in subsection (a) of this section, for the purpose of forbidding another to go or remain upon the lands, buildings or premises of such owner. Such designation shall include a description of the land(s), building(s), or premises to which it applies; shall reference the period of time during which time it is in effect; and shall be kept on file in the office of the chief of police or in such other

location within the police department as the chief of police deems appropriate.

Roanoke, VA., Code § 21-32(b).

## 2. Henderson's Arguments that Trespass Bar Statutes Give Rise to Constitutional Protections

Henderson acknowledges that the Roanoke Chief of Police has on file a writing designating the police department as a person lawfully in charge of the Valley View Walmart. (*See* ECF No. 7 at 4, 6–9.) He maintains, however, that the designation is defective because it was not made by a party with authority to represent the owner of the property.

Specifically, Henderson alleges that Wal-Mart Real Estate Business Trust, a separate corporate entity, owns the Valley View Walmart, which is operated by another Wal-Mart entity. (*See* ECF No. 7 at 2.) He argues that the designation on file with the Roanoke Chief of Police does not identify Wal-Mart Real Estate Business Trust as the owner of the property, instead listing the owner as "Walmart." (*See id.* at 5.) According to Henderson, this is not merely a scrivener's error, but instead shows that "[t]he Wal-Mart Real Estate Business Trust, the owner of the real property at 4807 Valley View Boulevard has never authorized the Roanoke Police Department to act as its trespass bar agent." (*Id.* at 4.) Henderson alleges that the Chief of Police was aware that the designation was defective and that the true owner had made no designation, but still issued an order instructing all Roanoke Police officers that they could issue trespass bar letters for the Valley View Walmart. (*Id.*) This order, Henderson argues, was the reason Officer McClain issued a trespass bar letter on October 15, 2018.

The sole basis for Henderson's § 1983 suit is an alleged violation of his constitutional right to procedural due process. (*See* ECF No. 7 at 21.) He argues that the Trespass Bar statutes

create a federal liberty interest that the City of Roanoke violated. Essentially, he believes that the process described in the Trespass Bar statutes—a written designation on a form prescribed by the chief of police stating that the police department is a person lawfully in charge of the property—is a "mandatory substantive predicate" to the issuance of trespass bar letters. As such, he contends, the Trespass Bar statutes, in and of themselves, create a federal liberty interest in not being trespass barred by a police officer who has not complied with that process. (*See* ECF No. 15 at 14–16.) Henderson does *not* argue that the Constitution independently invalidates the actions of the Roanoke Police. Instead, his argument is simply that the Roanoke Police failed to adhere to what he believes are mandatory procedures in the Trespass Bar statutes, and that this failure rises to the level of a constitutional tort. As explained below, this argument falls apart because the Trespass Bar statutes do not meet any of the Supreme Court's requirements for the creation of this type of liberty interest.[2]

### 3. Henderson's Arguments Fail Because Trespass Bar Statutes Do Not Give Rise to State-Created Liberty Interests and Attendant Due Process Protections

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." It protects "the individual against arbitrary action of government." *Wolf v. McDonnell*, 418 U.S. 539, 558 (1972). Courts must examine procedural due process questions in two steps. *See Stewart v. Bailey*, 7 F.3d 384, 392 (4th Cir. 1993). A court must first determine "whether there exists a liberty or property interest which has been interfered with by the state." *Id.* (citing *Bd. of Regents v. Roth*, 408 U.S. 460, 472 (1972)).

---

[2] As discussed below, the Supreme Court has only recognized liberty interests created by mandatory state-law procedures in cases involving prison and parole policies.

It must then "inquire[] whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.* (citations omitted).

Regarding the first step, the Supreme Court has long held that "[a] state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right." *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 467 (1981). Stated differently, a state statute may, depending on how it is drafted, trigger federal liberty interests and attendant procedural due process protections for those affected by the law. *See id.* But the extension of federal due process to state laws is circumscribed and is only derived, if at all, from the text of the statute, rule, or policy at issue.

The text of a state statute invokes Fourteenth Amendment due process considerations when it "creates a protected liberty interest by placing substantive limitations on official discretion." *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). A substantive limitation, or substantive predicate, is something more than a mere procedural requirement, it is a "particularized standard[] or criteri[ion] [to] guide the State's decisionmakers." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 462 (1989) (holding that state prison regulations restricting certain categories of visitors at prison facilities did not give inmates a liberty interest in receiving visitors). In addition to creating substantive predicates to guide official discretion, a state law must contain "explicitly mandatory language" in order to create a protected liberty interest. *Id.* at 463. Taken together, these two requirements mean "that which must be found mandated by state law [in order to support a due process claim] is not procedures alone, or even procedures plus substantive predicates (objective criteria) alone, but substantive results once prescribed procedures have revealed that substantive predicates have been established." *Hill*

*v. Jackson*, 64 F.3d 163, 170–71 (4th Cir. 1995) (holding that Virginia's parole-review policy did not give inmates a liberty interest in parole).

The Trespass Bar statutes simply do not meet these requirements. They do not limit official discretion; they do not contain any substantive predicates; and they do not contain mandatory language.

First, the Trespass Bar statutes are not directed at law enforcement, only at municipalities and property owners. And they do nothing to limit the discretion of the Roanoke Police in dealing with trespass. The Virginia law at issue in this case is an enabling statute that gives municipalities the option of creating a trespass bar program; it has no bearing on the authority of law enforcement in this situation. *See Lamar Co. v. City of Richmond*, 756 S.E.2d 444, 446 (Va. 2014) ("Enabling legislation is the mechanism by which the General Assembly 'expressly grants' power to local governments. Therefore, by nature, enabling acts are permissive."). The Roanoke statute likewise gives property owners a way to streamline the trespass bar process. Neither statute contains a prohibition or limitation—express or implied—relevant to law enforcement.

Henderson argues that the statutes should be read as setting out a list of requirements that must be met before police can bar a person from the property without specific authorization from the owner. (*See* ECF No. 15 at 14–16.) But this reading is belied by the plain text of the statutes, which do not in any way mention—let alone restrict or limit—the authority of law enforcement.

Second, even if the statutes could be read as somehow controlling or prescribing the duties of law enforcement in a trespass scenario, they still do not give rise to federal liberty

interests, because neither contains substantive predicates for the exercise of official discretion. At most, the Trespass Bar statutes prescribe procedures, which is insufficient to create a liberty interest. *See Conn. Bd. of Pardons*, 452 U.S. at 467 (Brennan, J., concurring); *Stewart*, 7 F.3d at 392. The procedures described in the statutes are mere tick boxes for what must be included in a form; they are not objective substantive criteria to guide or limit a police officer's discretion in determining whether to bar someone from private property. Substantive predicates describe the "circumstances under which [the exercise of discretion] is authorized," *Berrier v. Allen*, 951 F.2d 622, 625 (4th Cir. 1991), like the requirement in *Board of Pardons v. Allen*, 482 U.S. 369, 380 (1987), that the parole board "assess the impact of release on both the prisoner and the community" before paroling an inmate. The procedures in the Trespass Bar statues do no such thing; they only inform a property owner which lines to fill out on a form and what information to include. Therefore, they cannot create a constitutionally protected liberty interest. *See Thompson*, 490 U.S. at 462–63.

Third, even if the statutes are read to restrict the authority of law enforcement, and even if their bare procedures are enlarged into substantive predicates, they contain no explicitly mandatory language. Each statute uses mandatory language, but not in a way that is relevant or determinative here. There is no mandatory language in either statute that dictates that "a particular outcome must follow" in any given trespass bar case. *Id.* at 463. The Virginia statute says that any locality "may" establish an ordinance, and then requires that any ordinance so established "shall require that any such designation be in writing and on file with the local law-enforcement agency." Va. Code Ann. § 15.2-1717.1. This mandatory language only applies to the text of the Roanoke statute. The Roanoke statute says that property owners "may"

designate the police department to issue trespass bars, and then uses "shall" to describe what must be included in the designation. *See* Roanoke, VA., Code § 21-32(b). Like the Virginia statute, this mandatory language only applies to the contents of the designation, not the authority of any law enforcement official. And none of this mandatory language bears upon the exercise of discretion by a state official or the city itself.

Henderson argues as if the statutes pronounce that Roanoke police officers may only issue trespass bars if they have a designation properly on file, but they say no such thing.[3] He urges the court to find that the Trespass Bar statutes must create a liberty interest because, absent the procedures described therein, law-enforcement officers must obtain consent of the property owner before issuing a trespass bar letter. If the Trespass Bar statutes are the only legal way for law enforcement to independently issue trespass letters, Henderson reasons, their doing so in a way that does not accord with those statutes must violate the federal Due Process clause. The logic of this argument is fundamentally flawed. If Virginia law enforcement officers are generally prohibited from issuing trespass bar letters without the consent of a property owner but do so anyway, they have only violated whatever state law prohibited such letters in the first place. In other words, "when a state does not comply with a procedure specified in one of its own statutes or rules, it has violated that statute or rule, and nothing more."[4] *Stewart v. Bailey*, 7 F.3d at 392–93. For such a violation to become an issue of federal due process, it

---

[3] Henderson's arguments might be persuasive if, for example, the Virginia Trespass Bar statute mandated that localities promulgate trespass bar procedures for private property; expressly provided that these local procedures served as the exclusive method for local law enforcement to deal with trespass on private property; and required that police officers follow the prescribed local procedures in every trespass case. But the Virginia statute does not do any of these things.

[4] Accordingly, a Virginia court would be the appropriate forum to seek recourse for an alleged violation of these statutes.

would have to occur under a statute that places mandatory substantive limitations on official discretion. That did not occur here.

For a similar reason, Henderson's reliance on precedent recognizing liberty interests created by the constitution itself is unavailing. Henderson's argument repeatedly cites decisions of the Virginia Court of Appeals and the Virginia Supreme Court overturning a City of Richmond trespass bar procedure on First Amendment grounds. See *Commonwealth v. Hicks*, 563 S.E.2d 674 (Va. 2002); *Hicks v. Commonwealth*, 548 S.E.2d 249 (Va. App. 2001). The U.S. Supreme Court later reversed the Virginia Supreme Court's decision based on its determination that the petitioner's First Amendment rights had not been unconstitutionally restrained. *See Commonwealth v. Hicks*, 596 S.E.2d 74, 75 (Va. 2004). Citing these cases, Henderson contends that "Virginia has clearly recognized and adopted the principle that a person has a liberty interest in the freedom of movement . . . ." (ECF No. 15 at 14.) While this may be true as a general proposition, it is irrelevant to the analysis of the sole, and narrow, constitutional claim in his lawsuit against the City of Roanoke—that is, whether the city violated Henderson's procedural due process rights by failing to follow what he contends were the mandatory requirements of the Virginia and Roanoke Trespass Bar statutes. Put simply, the *Hicks* cases do not apply because Henderson has not alleged, for example, that the city violated his First and Fourteenth Amendment rights by barring him from the Walmart.

Instead, Henderson may only gain relief on his claims if the Trespass Bar statutes themselves create a constitutional liberty interest. But the Trespass Bar statutes do not limit official discretion, do not contain any substantive predicates, and include no relevant mandatory language. Therefore, they do not create a liberty interest and do not provide the

foundation for a federal procedural due process suit. On those grounds, Henderson's federal cause of action must be dismissed.

## CONCLUSION

For all these reasons, the City's motion to dismiss will be granted.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this day of 1st December, 2020.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE